[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12218
Non-Argument Calendar

_____

D. C. Docket No. 06-00460-CR-T-27-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO MEDINA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 25, 2008)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Sergio Medina appeals his 180-month sentence, imposed after he pled guilty to one count of conspiracy to distribute and to possess with the intent to distribute 5 kilograms or more of cocaine, in accordance with 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). Medina argues that the district court erred by failing to award him a reduction based on his minor role in the offense, pursuant to U.S.S.G. § 3B1.2 (Nov. 2006); that the district court violated his Sixth Amendment rights by enhancing his sentence using a quantity of drugs that was not found by a jury or admitted by him; and that the district court erred by failing to award him a two-level safety-valve reduction, in conformity with U.S.S.G. §§ 5C1.2 and 2D1.1(b)(9). Based on a review of the record and the parties' briefs, we discern no reversible error, and AFFIRM Medina's sentence.

## I. BACKGROUND

According to the Presentence Investigation Report ("PSI"), on 1 August 2006, police stopped a semi-tractor trailer in Texas and found over one million dollars inside. The driver told the officers he was recruited by Medina to transport cocaine to central Florida and return the proceeds to Medina in Arizona, and the driver agreed to help the police by becoming a cooperating source ("CS"). On 8

2

August 2006, Medina asked the CS to pick up drug proceeds in Florida from Medina's son-in-law, Julio Cesar Hernandez-Varela. On 12 August 2006, agents observed Hernandez-Varela give the CS a suitcase which contained $126,000, and the CS made a controlled delivery of the money to Medina in Arizona. Medina called the CS on 4 October 2006 and asked him to pick up 15 bricks of cocaine from Medina's house the next day, which the CS did. Medina told the CS to pick up nine more bricks of cocaine the day after that, which the CS did as well. Medina then directed the CS to deliver the 24 kilograms of cocaine to Hernandez-Varela in Florida. On 12 October 2006 the CS delivered 21 kilograms of fake powder cocaine to Hernandez-Varela. Agents later arrested Hernandez-Varela and Jose Olegario Rivas-Gastelum at a residence. Hernandez-Varela agreed to cooperate with police and sold 24 kilograms of cocaine on credit to Antonio Alls, who was subsequently arrested. After the delivery to Hernandez-Varela in Florida, agents arrested Medina on 12 October 2006. Hernandez-Varela admitted in his plea agreement that he had previously obtained cocaine from the CS, who had gotten it from Medina, and delivered it to Alls. The investigative materials provided that the range of cocaine distributed by Medina and Hernandez-Varela was between 50 and 150 kilograms. Medina pled guilty, without a written plea agreement, to conspiracy to distribute and to possess

3

with the intent to distribute five or more kilograms of cocaine.

In preparing the PSI, the probation officer calculated a base offense level of 36 after finding that Medina was accountable for between 50 and 150 kilograms of cocaine. U.S.S.G. § 2D1.1(c)(2). The probation officer increased the offense level by three levels based on a finding that Medina was a manager and supervisor of a criminal enterprise consisting of five or more individuals, applying U.S.S.G. § 3B1.1(b). Medina's offense level was then reduced by three levels for his acceptance of responsibility under U.S.S.G. § 3E1.1. The probation officer did not award Medina a minor-role or a safety-valve reduction. Medina's final adjusted offense level was 36 with a criminal history category of I, yielding a sentencing range of 188 to 235 months of imprisonment. Medina did not object to the PSI.

At the sentencing hearing, Medina objected to the three-level organizer enhancement by arguing that only four individuals were identifiable – the CS, Alls, Hernandez-Varela, and Rivas – and therefore, only the two-level organizer enhancement in U.S.S.G. § 3B1.1(c) should be applied. R2 at 3-6. The prosecutor replied, "I believe [Medina's counsel] agrees with me, that the two-level enhancement would be appropriate." Id. at 4. When asked if he agreed with the application of the two-level organizer enhancement, Medina's counsel responded, "That is correct, Your Honor." Id. Medina's counsel acknowledged that Medina

4

was responsible for involving Hernandez-Varela, and the CS, who was running money and drugs between states, in the criminal enterprise. Id. at 11. The district court sustained the objection and applied the two-level enhancement, pursuant to U.S.S.G. § 3B1.1(c). R2 at 7. Medina offered no other objections to the PSI or to its application of the Guidelines. The court found that the adjusted guideline range was 168 to 210 months of imprisonment.

After considering the advisory guideline range and the factors set out in 18 U.S.C. § 3553(a), the district court found that Medina had engaged in cocaine trafficking, and that, in a broader context, his "involvement [was] as serious if not more serious than anyone else's in the chain of the importation." R2 at 18. The district court concluded that Medina's crime was "a serious offense," and that the "quantity of cocaine involved [was] not insubstantial." Id. at 16. Given the severity of the offense, the court found that a sentence at the low end of the guideline range was inadequate. The court sentenced Medina to 180 months of imprisonment and 5 years of supervised release. After pronouncing the sentence, the district court asked Medina if he had any objections to the sentence imposed or the manner in which was pronounced, and Medina's counsel replied "No, Your Honor." Id. at 22.

II. DISCUSSION

Medina believes that the district court erred by: (A) failing to award him a reduction based on his minor role in the offense, pursuant to U.S.S.G. § 3B1.2; (B) violating his Sixth Amendment rights by enhancing his sentence with a quantity of drugs that was not determined by a jury or admitted by him; and (C) neglecting to award him a two-level safety-valve reduction, in conformity with U.S.S.G. §§ 5C1.2 and 2D1.1(b)(9).

A.  Minor-Role Reduction

We review objections to sentence issues that are not raised at the district court for plain error and can make corrections only if there is an error, that is plain, and that affects substantial rights.  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).  If these criteria are met, we have the discretion to correct the error, and "should" correct  the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993) (citation omitted).

Section 3B1.2 of the Guidelines permits a mitigating-role adjustment to the guidelines range for a defendant who, as either a minimal or minor participant, is substantially less culpable than the average participant.  U.S.S.G. § 3B1.2, comment. ( n.3(A)).  A defendant bears the burden of establishing his role by a

6

preponderance of the evidence.  United States v. Rodriguez De Varon, 175 F.3d 930, 934 (11th Cir. 1999) (en banc).  The district court's determination concerning a role adjustment is premised on a case-by-case factual inquiry.  U.S.S.G. § 3B1.2, comment. (n.3(C)).  We accord the district court "considerable discretion" in making this determination.  United States v. Boyd, 291 F.3d 1274, 1278 (11th Cir. 2002).

Under Rodriguez De Varon, the district court conducts a two-pronged analysis of the defendant's conduct to determine whether the defendant warrants a minor-role reduction.  First, "the district court must assess whether a defendant is a minor or minimal participant in relation to the relevant conduct attributed to [him] in calculating [his] base offense level."  Rodriguez De Varon, 175 F.3d at 941. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable – not a minor role in any larger criminal conspiracy – should the district court grant a downward adjustment for minor role in the offense."  Id. at 944.  Next, the district court may assess a defendant's relative culpability vis-a-vis any other participants.  Id.

The record shows that Medina supplied and shipped large amounts of cocaine across the country, and that his involvement was integral to the operation of the conspiracy.  Beyond directing the shipping of the cocaine, Medina was also

responsible for obtaining it from Mexico. Without Medina's ability to procure cocaine, the conspiracy could not have functioned. Therefore, the district court did not plainly err by not awarding Medina a minor-role reduction. See Rodriguez De Varon, 175 F.3d at 944.

B. Sixth Amendment Violation

We review objections to sentencing issues not raised with the district court for plain error. Rodriguez, 398 F.3d at 1298. "Any fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt." United States v. Booker, 543 U.S. 220, 244, 125 S. Ct. 738, 756 (2005). If a defendant does not object to a fact as recited in the PSI, the defendant has admitted that fact. United States v. Gibson, 434 F.3d 1234, 1251 (11th Cir. 2006).

Medina did not object to the quantity of drugs as proffered in the PSI, thereby effectively admitting responsibility for that amount. The district court committed no error, plain or otherwise, by calculating a guideline range based on facts uncontested by Medina.

C. Safety-Valve Reduction

The invited error doctrine precludes review of an error invited or induced by

8

a party.  United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005).  Pursuant to U.S.S.G. § 2D1.1(b)(9), a defendant may receive a two-level offense level reduction if he satisfies the five criteria of the safety-valve provision, U.S.S.G. § 5C1.2.  A defendant may qualify for safety-valve relief if, among other things, "the defendant was not an organizer, leader, manager, or supervisor of others in the offense."  U.S.S.G. § 5C1.2(a)(4).  This excludes "a defendant who receives an adjustment for an aggravating role under § 3B1.1."  U.S.S.G. § 5C1.2, comment. (n.5); see also United States v. Rendon, 354 F.3d 1320, 1333 (11th Cir. 2003).

At sentencing, Medina conceded deserving a two-level increase for his role as an organizer and supervisor, pursuant to § 3B1.1(c).  On appeal, he has not challenged his enhancement under § 3B1.1(c).  Because Medina invited the sentencing enhancement, which is determinative of the safety-valve issue, we will not review it.  See Silvestri, 409 F.3d at 1327.

### III.  CONCLUSION

Medina challenges the180-month sentence he received after pleading guilty and then making no objections to the facts listed in the PSI during sentencing.  As we have explained, the district court did not err when it sentenced Medina. Accordingly, the district court's sentencing enhancements are **AFFIRMED**.